Gertz. Welcome back. Pleasure, Your Honor. Good morning. May it please the Court, if I can make just one comment, not having to do with the case, Your Honor, I'm in trial in Hennepin County. One of the prospective jurors yesterday was your granddaughter. My granddaughter, who is a fine woman, said she was an extern working for you. As to this case, I was also trial counsel on Mr. Mayer. And I was there in 2019 at the motions hearing when the primary issue in this case arose. And this is the sort of thing that happens probably every single day in the district courts of this circuit. The defendant makes a broad motion to suppress evidence, including a variety of surges and seizures or statements. Government counsel, knowing the irrelevance of much of what is being sought to be suppressed, tells the magistrate judge, Your Honor, we don't intend to use that evidence at trial. Therefore, we don't need to waste our time on it. The matter is moot. And the Court accepts that representation. The other party accepts that representation. It's not required to be written. We just go with it because it's a government promise by a respected government counsel who we know will keep his or her word. This case ran a little afoul, I think, because counsel changed. And new counsel, by the time it actually got to trial, was not counsel who had been present during the first — during that motion hearing and made the representations that it did not intend to use the evidence. So they just weren't aware of it. It wasn't forefront. I'm not accusing them of intentionally violating this promise because they just forgot. I brought it up to the district court before we started trial, moving in limine to exclude it based on the government promise. And as it turned out, the district court, based, I think, on some representations by new counsel, analyzed it under Rule 12, considered it a new motion to suppress. Let me just refresh me. Did the change in counsel occur before or after the superseding indictment? I think there was more than one superseding indictment. Well, let's see, one in September 2019. After that, I believe. Yeah. In fact, primary government counsel at trial, I think, stepped in only shortly before the trial, maybe six months or something like that. There was another AUSA on the case who had been there all along, but I think this was only his second trial. In any case, it is a very efficient mechanism for resolving these pretrial motions because if you don't intend on using it, it is not worth anybody's time. But you have to be able to rely on that. The court has to be able to rely on that, and certainly opposing counsel has to be able to rely on that. In this case that was not filed, the district court misconstrued it as a motion to suppress under Rule 12, which it was not. And it resulted in a very bizarre set of circumstances at trial because the reason counsel initially said that they did not intend to use the evidence is because it wasn't relevant to anything that was charged in the case. That's why it shouldn't have been — another reason why it shouldn't have been permitted. But they nonetheless creatively brought it into the case to — This is complex. To me, the procedural history is complex. Nothing new about that. So I'm having trouble following where you're talking about. For me, the key issue seems to be the indictment did not allege the offense in 2017, only in the September 2019 superseding indictment. Isn't that clearly a change in the case? Do you have favorable Rule 12b-3 authority on that issue? Your Honor, there was no significant change. The only change in the case, they added a one count — well, one count that went — Well, the new count made the hotel evidence relevant. Absolutely not, Your Honor. The new count only related to a contraband image found on a phone. So the argument on appeal, the 12b-3 argument, is it wasn't a change in the case for that reason? There wasn't a change in — there was a change in the — here, let me step back a little bit. The government did reserve the right, if the case changed, to put in evidence from the phones. So the motion to suppress — The phone? Yes, the motion to suppress included motion to suppress evidence from phones and evidence from the motel room where he lived. Yeah, that's what I'm talking about. Right. Underpants and stuff. The government said, with respect to the stuff in the hotel room, that's — we don't intend to use that. However, if our case changes and we can get into these phones, we do want to use that evidence and we want to reserve the right to use that evidence. Yes. And that is exactly what changed. They got into the phone. You are correct, Your Honor. They used evidence from the phone for that additional count. Now you're saying that the caveat, I'm misunderstanding or they're misstating the initial caveat? They certainly are here on appeal. It's very clear, though. But prior — well, prior to trial, they had — with their evidence list and everything else, you say, oh, well, ignore that, but I don't think we can. Well, their exhibit list, Your Honor, was just a mistake. It was a mistake because new counsel forgot, was not aware of it. I brought it to their attention before trial, as I probably should have. Okay. What's the 12B3 argument and what's the standard of review on it? Well, this is not a — this is not a motion under Rule 12, Your Honor. Rule 12 was invoked improperly because it had nothing to do with Rule 12. This was a motion to — Now you're saying 12B3 is irrelevant? Rule 12 is irrelevant to the issues here. Well — It can't be. Wait a minute. The motion to exclude was a motion to eliminate, to exclude evidence based on the government promise, to hold the government to its promise and not permit the evidence. And when did you make that motion? Was that made — you said before trial. I thought it was made the morning of trial. Yeah, before trial started. But you're correct on the day we were going to get started. So when you — I want to make sure I understand the scenario here. So it's — so the items are on the witness list. You know they're on the witness list. And you just said, if I understand correctly, that was a mistake because they forgot about the promise or the new lawyer didn't know about the promise. And you alerted the government to that mistake. When did you alert the government to the, quote, unquote, mistake? When they were — when they showed me the — what they were going to use as visuals in their opening statement. Counsel showed me, well, this is what we planned. Do you have any objection to this stuff? I said, well, yeah, you can't use that. You said you weren't going to use that. And was that on the morning of trial? Yes. Okay. So prior to the morning of trial, there was no discussion about what was on their exhibit list or whether they had promised not to use these items. No, no. And, of course, you're free to object to anything on their exhibit list for any pertinent reason. Did you file a renewed motion to suppress as to the cell phone, 2017 cell phone, when it was unlocked? I did file a renewed motion to suppress because they gave specific notice that they intended to use that evidence that they had just acquired. So we had a new round of — a new motion hearing based specifically on the evidence that they gave notice of that they intended to use. Counsel, Judge Kovats here. Were these items mentioned in the trial brief? And if so, when was the trial brief filed? I'm given to understand that there was mention of them in the trial brief. I'm sure it was filed at least a couple weeks before trial. I don't have a precise date. Well, doesn't that clear up whether it was a mistake or not? I mean, if you had concerns that it was, you know, on the exhibit list, I guess I can see that. But if you've got an articulated brief that explains their intent to use this evidence, and presumably for what purpose, doesn't that undermine your argument a bit that, you know, it was reasonable to think it was simply a mistake? I'm not sure. There's no question that it was because they conceded, essentially, the mistake that they were unaware of it when we were discussing it on the day of trial. I don't recall what the trial brief said about it, about that evidence. It made mention of it. But as I stand here, I don't know that they said that they intended to use it. I just – in any case, I made the appropriate objection to exclude the evidence before trial. So it's not – so they would – That was denied, right, the phone? The motion to suppress the phone evidence ultimately was denied, correct. And what's the timing here? Oh, it was well before trial, I'm sure, because it was – but we're not talking about the phone evidence, Your Honor. We're talking about – No, but what different argument did you have on the other – on this stuff? The – that issue never was resolved. The argument with respect to the phone was resolved on the basis that we had – that Mr. Mayer had no privacy interest in the phone because he said it belonged to someone else. That was the only basis for that ruling. So at the end of the day, they had promised that they weren't going to use the evidence. They complained that, well, simply because we made a mistake, you should have known better and given us a little bit more of a heads-up. But considering that it wasn't relevant to anything at all in the case, in the trial, and was offered simply for its prejudicial effect, terrible prejudicial effect that they used to great – they were waving these things around in the courtroom as they were talking to the witness and suggesting that Mr. Mayer was some sort of infant predator. It was just astounding. And I think that, one, if we permit the government simply to change its mind and say, well, you've got to renew your motion if you have some sort of signal that they're changing their mind, they have to give notice to the court. The court – we've changed our mind. We now want to use this evidence. If Mr. Gerst wants to file a renewed motion to suppress it, he should have the opportunity. If he doesn't want to, fine, but now we intend to use it. And that express notice simply was not given. I had a couple of questions on your argument that I think you're saying. You argue a due process violation because the government made material representations and isn't being held to its word. I didn't see an Eighth Circuit site supporting that. Your Honor, I think there was one case. What's your best circuit court case, then? I think that was, what was it, Williams? Hold on here, Your Honor. Well, I thought I wrote it down. It's cited in the brief, and I think it was Williams, and it makes reference to a Fourth Circuit case. And that all regards not merely the due process, but – oh, excuse me. It's the Eighth Circuit case. It's Thompson, 403 F3rd 1037. And it notes that this also goes to concerns for the honor of the government, public confidence, and fair administration of justice. Now, then you said the district court's waiver determination is wrong. The validity of the motel room search was already ripe for review. The only thing that was ripe was the cell phone issue because the government hadn't yet cracked the encryption. And my question is, what's the standard review? What are we reviewing, and what's our standard review for that argument? Which argument? About whether it was ripe or not? This notion that the district court said it was already ripe. The district court said it was already ripe for review, so, you know, this is waived. And you say, no, it wasn't. The only thing that was ripe was the cell phone interview. Yeah, actually, the other way around. What are we reviewing, and what's our standard review? Well, the standard of review is for the court's abuse of discretion in admitting evidence in violation of the government's promise not to use it. And I've already used all my time, even though I wanted to save some for... No. Thank you. Well, we'll give you probably a shot for a little bit of a rebuttal. Good morning, Your Honors, and may it please the Court. My name is Kate Buzicki. I represent the United States in this matter. In this case, the government's representation to the district court was very clear. It did not intend, at the time of the first indictment, to use the motel room evidence, the underwear and the diapers seized from the defendant. That's what I thought, but counsel said it was only addressing the cell phone. So how do... Where do we look in the record for that? Your Honor, the best place to look in the record regarding the government's representation is Record Document 28 at page 5. And with the Court's permission, I can read what the government said. As for the items seized from Mayer's hotel room, which included children's underwear and a child's diaper, so specifically pointing out those items, the United States does not intend to use these items as evidence in its case in chief, which presently focuses on Mayer's sexual exploitation of minor A. And this was submitted to the magistrate judge then on the pending Rule 12? Yes, Your Honor, this was at the stage of the pretrial motions, so the motion to suppress and other pretrial motions. In this situation, at this stage in the case, as the government stated in its written submission, the only thing to be decided was Mayer's offenses in 2018. The government knew that there may be offenses in 2017 that could be relevant, but as has been made clear, it could not access the contents of the phone seized in 2017. That phone was preserved, and agents were attempting diligently to get into the contents of the phone. When they did that, the next step was for the government to obtain a superseding indictment. The superseding indictment and every subsequent charging document had at least one count relating to 2017. The fact that the indictment, as Judge Loken has stated, then added counts from a different year from 2017 was more than sufficient notice that any motion related to the motel room where the phone was seized in 2017 should then be filed. And the defendant had ample opportunity to do so, given that there were several superseding indictments in this case. What the government made clear — I guess — I mean, there's sort of two issues here. One is a legal one, and one's a real-world one, I guess. And the legal one is whether or not, legally, the notice that you gave by superseding the indictment and putting down the witnesses is enough, and whether Judge Wright was wrong to adopt your position. The real-world one, I guess, is if you say you're not going to use evidence, does the fact that you supersede automatically require the defense counsel to assume that everything you said you weren't going to use before is now going to have to be a renewed motion to suppress? Shouldn't there be some obligation on the part of the government, after they've said, we don't think this issue is relevant to anything we're doing right now, that at some point affirmatively state that it's relevant? Your question is a complex one, so I'd like to answer it with two parts, with the Court's permission. Specifically, again, going back to Record Document 28 at page 5, the next few sentences may answer the Court's question. The government states, after describing the status of its case at that point, which focused on 2018, the very next sentence, Therefore, the issue of suppression is moot, or at a minimum will only be ripe for adjudication later, should the United States' case against Mayer change. The government clearly previewed and anticipated to all, the Court and the defendant, that this case could change, and the government was candid throughout the process that it was attempting to access this 2017 cell phone. So this is not a situation where the government made a blanket representation or a promise, as the defendant would construe it, but rather where the government said, this case is evolving, it was a case in which we acted quickly to charge the count we knew about or the counts we knew about, to be more precise. But we believe there are counts related to earlier conduct in 2017. With respect to the second part of your question, Judge Malloy, it is certainly a matter of courtesy and would be preferable in many situations for the government to provide additional warnings or updates on the nature of its case. But here, based on the entire record, the superseding indictments, the government's representation on page 5 of Document 28, the government's exhibit list, and finally the trial brief, which was filed 21 days before trial, which stated these items, this underwear and these diapers, excuse me, this diaper and these pairs of underwear, will be relevant and introduced at trial, gave no question that the defendant, if he sought to raise a motion, should have done so. And in fact, the current version of Rule 12 gave him the opportunity to make an argument. The government's representations have changed, this case has changed. That, therefore, is my good cause for a late motion to suppress. He could have done so at any stage in this proceeding and just simply did not do so. The other point I'd like to address that the defendant raised here today in court was the nature of this evidence. The key issues at trial were the statements of the victim, minor A, and the defendant's admissions about his sexual interest in children, his relationship with minor A, his use of the Internet. We also had numerous law enforcement witnesses, whether they were forensic examiners, special agents from the FBI and other law enforcement entities, to discuss the child pornography that was found relating to 2017 and 2018 and the defendant's sexual exploitation of minor A. The underwear, to be specific and precise, and the diaper came in only on a few instances. Once in opening, once in closing, one law enforcement witness who testified about it and questions to the defendant himself. It simply was not a key issue at trial as Mr. Gertz has represented today. In fact, it was the opposite. It was a minor issue. In this case, therefore, the issue of prejudice that Mr. Gertz has raised simply is not there. The evidence was a minor part of a several-day-long trial, and the focus of the trial was the testimony and exhibits that were seized from the defendant in his, or excuse me, and the child exploitation material seized from the defendant on his cell phones, not on the items in his motel room in 2017. Unless this Court has any further questions on this issue, I'd like to briefly discuss the issue of the district court's findings on the 600 images enhancements, and at that, I will conclude my remarks. Well, I would like you to also discuss, I'm not sure the district court got the grouping right. What's your position on that? Your Honor, the grouping issue, as this Court knows, is a complicated one. In this case, as the brief that we submitted makes clear, there really isn't a way for the arithmetic to work out in the way that the defendant would prefer. Under any configuration of the grouping, and as the PSR pointed out as well, and the district court noted at sentencing, the defendant's offense level is going to be above 43. That being said, the defense does point out that this Court has examined the issue of grouping with respect to child exploitation matters on a few previous occasions, and there are some differences in other circuits' approach to grouping. In this case, there are subsection D and subsection B mainly in play. Obviously, as the Court knows, there are four ways that grouping could take place, but because of the nature of these offenses, D and B are the most relevant. The rule with respect to grouping of child exploitation cases on subsection D is very clear. They don't group. That doesn't mean that grouping can't be accomplished through some alternative theory. While there wasn't an extensive discussion of grouping at sentencing, the district court did make clear it was following this Court's precedent on the issue of grouping as articulated in Keel and Bevins, and the district court found that grouping was not appropriate. It did use the word scheme, and that use was likely deliberate because scheme or continuing common scheme is what is potentially a theory for grouping under subsection B. But again, looking at the math, just the bare facts and the arithmetic in this case, there's very – there's really no way for the defendant's two hurdles to be leapt over. The defendant would have to show that these counts that we're talking about, counts 1, 2, and 5, would drive the offense level at the end of the day. They do not. The offense level is driven by counts 4 and 7, and would also have to show that somehow the offense level would be below 43, and that's simply impossible on these facts. Very briefly, before I conclude, the district court in this case made extensive findings on the issue of the 600 images. The district court looked at the entire nature of the trial and the evidence presented before it. It specifically called out all kinds of issues relevant at trial, apart from the forensic examiner from the FBI's testimony. We know from both Minor A and the defendant that there were video chats involving the two of them that contained sexually explicit visual imagery of Minor A. The testimony of Special Agent Blackmore was also highly relevant on the number of images, and so looking at all of those other aspects of the trial and then factoring in Examiner Clemson's testimony about 500 to 700 images in a single folder, the kiddie porn heaven folder, there's really no abuse of discretion, no clear error, and no question that the district court was absolutely accurate in determining that there were more than 600 images in the defendant's case. Recalling that the guidelines talk about the word involve and not possess, receive, or distribute, as the defendant would prefer, involving gives play in the joints. It gives district courts the ability to look at the entire course of conduct and determine how many images may be relevant to the sentencing guidelines. Unless there are any further questions on this issue, I'll conclude my remarks. Well, let me just go back. What's your view of the standard review of the due process argument that's made as presented on appeal? Your Honor, the due process argument, I think, is irrelevant to this case. If the court wants to look at Well, I suppose at some point a breach of promise issue can impact due process. Yes, that is true. A breach of promise in some situations could create a due process concern. In this case, again, going back to first principles, there was no such promise. As I stated from Record Document 28, the government was very clear this was an evolving case, it could change, and that that evidence from the motel room could become relevant. So while breaches of promise can without question be relevant in some cases, and as the defendant leans on very heavily, the obvious example is the plea agreement context. In this case, the government was previewing what could happen and what did, in fact, happen. The case changed, and the motel room evidence became relevant. And so what's the So the operative ruling is the morning of trial denial under Rule 12b3 NC. Yes, Your Honor. It's the issue There's a lot of past, but the prologue is the ruling. We should review that under the normal principles of 12b3, which isn't litigated that often. Yes, Your Honor. As the government has stated in its brief, the standard of review we urge is abuse of discretion. The district court did not abuse its discretion in making its decision on this case. And interestingly, Judge Loken, one of the things the district court did before making its ruling was take a recess to review the record in this case. So with that in mind, certainly there were various statements by counsel. Some things may have been confusing or misstated, but the district court took a pause, looked at the record in the case, and made an independent decision on the facts and the record before it. It didn't abuse its discretion in doing that. Instead, it was made with a clear understanding of what had happened before the morning of trial. So while the past and prologue remark is certainly accurate, the district court had all that in mind in making its decision. Thank you. Thank you, Your Honors. Mr. Girtz, do you want a couple minutes? Yes, Your Honor. Thank you. First, the standard of review I urge is de novo because this concerns whether the interpretation and enforcement of a government promise. And that was the issue that I brought before the judge. It had nothing to do with Rule 12. It was the government said it wouldn't use this. And counsel is absolutely wrong what it said just now, that the government made clear that, oh, it could change and it might use the motel room evidence. It said the motel room search was moot. It said the search of the phone found on the search of his person was not right. What's the standard of review as to whether there was a breach of promise? It's a clear error, isn't it? Well, I suggest, based on the case I cited, that it is de novo. The factual findings, I suppose, are reviewed for clear error. But whether, at the end of the day, whether it should be enforced in the interpretation of the agreement, according to the DeWitt case, at least, is de novo. I also disagree with the counsel's statement. I'm just — I take great offense at this. The counsel who is not at the trial is telling you that, oh, this was just de minimis, had nothing to do with anything. It was a significant, weird demonstration in front of the jury, and it happened repeatedly. And it happens both — interestingly, both in opening, when they start waving around this stuff, and in closing, where they accuse him of doing something improper by possessing this laundry. They say that he was caught with it. And they tie it into the other things that supposedly he's accused of. And this was not a case that — they did not have a really strong case. The victim in this case was my best witness, based on her testimony. But I see I've also run out of the two minutes. I thank you very much, Your Honor. Thank you, counsel. The case has been well briefed and well argued. The argument's been helpful. It's hard to make this one crystal clear, but you've tried. And we will take it under advisement. Does that conclude the morning's arguments? Yes, it does, Your Honor. Very good. The court will be in recess until 9 o'clock tomorrow morning.